# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

FRED CLARENCE FLEMING,

        Defendant-Appellant.

UNPUBLISHED
September 8, 2015

No. 317040
Clinton Circuit Court
LC No. 12-009004-FH

Before: BORRELLO, P.J., and HOEKSTRA and O'CONNELL, JJ.

PER CURIAM.

Defendant, Fred Clarence Fleming, appeals as of right his convictions, following a jury trial, of larceny from a motor vehicle, MCL 750.356a, and aggravated stalking, MCL 750.411i. The jury acquitted Fleming of first-degree home invasion. MCL 750.110a(2). The trial court sentenced defendant to serve two years and six months to five years' imprisonment for his convictions. We affirm Fleming's convictions but vacate his sentence and remand for resentencing pursuant to the Michigan Supreme Court's decision in *People v Lockridge*, ___ Mich ___; ___ NW2d ___ (2015).

## I. FACTS

Fleming and the victim were in a long-term relationship and have a child in common. The victim testified that she ended her relationship with Fleming and moved to a new home. Fleming and the victim informally divided custody of their child.

According to the victim, officers arrested Fleming after an incident in July 2012. When asked if "there was a sexual element" to the incident, she answered, "Correct." The victim testified that Fleming was charged with "CSC, assault."[1] Fleming was released on bond, and he was not supposed to contact the victim. The parties stipulated to admit Fleming's pretrial release order, which specified that he was arrested for CSC.

---

[1] CSC stands for criminal sexual conduct.

At trial, Fleming testified that the victim had frequent consensual contact with him after his arrest. The victim testified that she did not. Other witnesses, including the victim's child, testified that the victim had at least occasional contact with Fleming.

On September 19, 2012, the victim testified that she was dropping her child off at school. She saw Fleming "out of the corner of [her] eye," approaching her van. According to the victim, Fleming opened the van door and instructed the child to go with him. She told Fleming to move away from her vehicle and told the child to go inside the school. The child went into the school, and Fleming then got into his car. Moore testified that the incident made her feel harassed and frightened. Fleming denied opening the van door and testified that he just met the child at the school.

The victim testified that she returned to her house on September 21, 2012, after dropping the child off at school. After she emerged from the shower, Fleming grabbed her by the throat and threw her onto the floor. She screamed, and Fleming placed his hand over her mouth and told her to shut up. Fleming then put his hands around her throat and said that he wanted her dead, he was going to get acid and put it on her face, and that she was "not going to leave here today."

According to the victim, she told Fleming that her father was coming over "any minute" to pick up the child's science project and take it to school. Fleming asked her where the science project was, and the victim told him that it was in her van with her phones. Fleming left and the victim retrieved another cellphone and sent a text message to "dad" to call 911, intending to send the text message to her father. However, because the phone belonged to the child, the message actually went to Fleming. The victim testified that she told Fleming that the police were on the way.

Fleming became angry, grabbed her by the hair, dragged her down the stairs, and shoved her into the van. The victim testified that once inside the van, she locked the van door. Fleming unlocked it with his key fob, and they briefly engaged in a door locking and unlocking struggle. Fleming eventually said that he was going to get acid and left. The victim ran to a neighbor's house to call 911 and the police arrived. When Fleming was arrested, he had the victim's cellphone and the child's cellphone in his pockets.

According to Fleming, the victim invited him over to her house and asked her to get the child's science project out of her van. He testified that he went back to the house when he could not find the science project, and the victim informed him that she had called the police on him. Fleming then left.

Deputy Ryan Castelein of the Clinton County Sheriff's Department testified that when he arrived, the victim was "very shaken up, crying, upset, very distraught." The victim testified that the incident made her feel distressed, threatened, and terrified. Deputy Castelein testified that the victim had redness on the left and right sides of her neck. According to Deputy Castelein, there were no signs of forced entry to the home.

## II. SUFFICIENCY OF THE EVIDENCE

Fleming contends that the evidence was insufficient to support his conviction of aggravated stalking because he did not commit two acts of harassment. Fleming contends that the jury acquitted him of the September 21 home-invasion charge, and the September 19 and July incidents did not constitute harassment. We disagree.

Due process requires that the prosecution in a criminal case introduce evidence sufficient to justify a trier of fact in concluding that the defendant is guilty beyond a reasonable doubt. *People v Johnson*, 460 Mich 720, 723; 597 NW2d 73 (1999). We review a defendant's sufficiency of the evidence claim de novo, considering the evidence in a light most favorable to the prosecution to determine "whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Ericksen*, 288 Mich App 192, 196; 793 NW2d 120 (2010). Circumstantial evidence and reasonable inferences arising from that evidence can sufficiently prove the elements of a crime. *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008). The jury may draw inferences from the evidence. *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).

The aggravated stalking statute defines "stalking" as "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." MCL 750.411i(1)(e). A "course of conduct" requires "a pattern of conduct composed of a series of 2 or more separate noncontinuous acts evidencing a continuity of purpose." MCL 750.411i(1)(a). Stalking is aggravated when "[a]t least 1 of the actions constituting the offense is in violation of . . . a condition of pretrial release . . . ." MCL 750.411i(2)(b). It is undisputed that Fleming's conduct violated his condition of release. The core of Fleming's contention is that he did not engage in a willful course of conduct.

"Harassment" is "conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress." MCL 750.411i(1)(d). In turn, "unconsented contact" is "any contact with another individual that is initiated or continued without that individual's consent or in disregard of that individual's expressed desire that the contact be avoided or discontinued." MCL 750.411i(1)(f). Unconsented contact includes, among other things, "appearing within the sight of that individual" and "[a]pproaching or confronting that individual in a public place or on private property." MCL 750.411i(1)(f)(*i*) and (*ii*).

In this case, the victim testified that in July 2012, police were called after an "incident" with Fleming. Fleming was arrested and charged with domestic violence and a criminal sexual assault. Even though the victim did not give details of the incident, the jury could reasonably infer from the fact that the police were called and that the victim did not consent to the conduct. The jury could also reasonably infer a reasonable person would feel harassed by the conduct. Further, the victim testified that the incident made her feel harassed and threatened.

The victim also testified that on September 19, Fleming approached her at her son's school. She testified that Fleming opened her van door and ordered her son to go with him. She testified that the incident made her feel harassed and frightened.

-3-

We conclude that a reasonable jury could conclude that the September 19 incident constituted harassment. Fleming approached the victim in a public place. He was not supposed to have contact with her because he had been arrested and charged with sexually assaulting her. Given these facts, a reasonable jury could find that this incident constituted unconsented contact, that a reasonable person would fear having someone charged with a previous assault against them approaching them, and that the victim did in fact feel harassed.

Fleming also contends that because the jury acquitted him of home invasion for the September 21 incident, it necessarily could not have considered the incident as evidence of harassment. We disagree.

The victim testified that, during that incident, Fleming entered her home and made threats against her life. A reasonable jury could find that this incident constituted unconsented contact, that a reasonable person would fear that conduct, and that the victim did in fact feel harassed.

The fact that the jury also acquitted Fleming of home invasion does not necessarily mean that the jury could not have found that the incident constituted evidence of harassment. First, "jury verdicts rendered in several counts of a multicount indictment need not be consistent." *People v Vaughn*, 409 Mich 463, 466; 295 NW2d 354 (1980). Second, because other elements of the home invasion crime were in dispute, such as whether Fleming committed a breaking, the jury verdicts were not necessarily inconsistent in fact.

We conclude that sufficient evidence supported Fleming's aggravated stalking conviction. A reasonable jury could have found at least two separate acts of harassment from Fleming's conduct.

### III. INEFFECTIVE ASSISTANCE

Fleming contends that trial counsel rendered ineffective assistance by failing to impeach the victim with text message records. Following a remand for an evidentiary hearing, the trial court found that Fleming's trial counsel acted reasonably and that his actions had not prejudiced Fleming. We reject Fleming's claim that the trial court erred.

A criminal defendant has the fundamental right to effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20; *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984). A defendant's ineffective assistance of counsel claim "is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). When reviewing an ineffective assistance of counsel claim, this Court reviews for clear error the trial court's findings of fact, and reviews de novo questions of law. *Id.* A finding is clearly erroneous if, after reviewing the entire record, we are definitely and firmly convinced that the trial court made a mistake. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012).

To prove that his defense counsel was not effective, the defendant must show that (1) defense counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that counsel's deficient performance prejudiced the defendant. *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994). The defendant must overcome the strong presumption that defense counsel's performance constituted sound trial strategy. *People v*

*Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). We give defense counsel wide discretion in matters of trial strategy because counsel may be required to take calculated risks to win a case. *Pickens*, 446 Mich at 325.

In this case, the parties disputed whether the victim voluntarily met Fleming on September 13. Thomas Enneking, Fleming's nephew, testified that he drove Fleming to a baseball field at about 10:00 a.m., dropped Fleming off, and waited in his car for a couple of hours while the victim and Fleming talked. The victim denied meeting Fleming that way and testified that she was "probably at work."

Fleming contends that trial counsel should have impeached the victim's testimony with text message evidence, which indicated that the victim texted "S Kent" that she would "stop by where is your office," that she texted "Lost" to her son's cell phone at 10:26 a.m., and that she texted "S Kent" that she was in his office and needed to talk to him at 1:52 p.m. Kenton Shultz testified that he knows the victim and they had numerous contacts in September 2012, including that she came to his office. According to Fleming, this evidence indicated that the victim was not actually at work on September 13.

At the evidentiary hearing, trial counsel testified that he reviewed every phone record in the case, discussed them with Fleming, and that Fleming provided suggestions about questions that he ask to the victim. Trial counsel testified that he did not call attention to the "Lost" text message because it was ambiguous and he believed it contradicted Enneking's testimony. According to trial counsel, "if I had brought that in, it would've run contrary to Mr. Enneking's testimony, because he says they're meeting at 10:00. Why would Ms. Moore be contacting Mr. Schultz at the time that this meeting is supposed to occur?" Trial counsel testified that Enneking's testimony was important because he was a neutral eyewitness and counsel did not want to contradict it. Trial counsel also explained that there was other evidence that the victim "was less than truthful about the other meetings." The trial court found that counsel's actions were reasonable.

While a close question, we conclude that the trial court did not clearly err by finding that trial counsel acted reasonably. What evidence to present is a matter of trial strategy. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). Counsel's failure to impeach a witness may constitute ineffective assistance of counsel. See *People v Trakhtenberg*, 493 Mich 38, 57-58; 826 NW2d 136 (2012). However, trial counsel need not impeach a witness on each and every contradictory aspect of his or her statements. See *People v McFadden*, 159 Mich App 796, 800; 407 NW2d 78 (1987).

In this case, trial counsel had a reasonable strategic purpose for not admitting the text messages. Counsel was concerned that the victim's texts to Shultz at about 10:00 a.m. would lead the jury to conclude that she was not at the park at 10:00 a.m. Trial counsel's decision against admitting the "Lost" message is more questionable, since facts established that Fleming had the victim's son's cellular phone and the jury could infer from that evidence that the victim was running late to meet Fleming. However, the victim could then have moved to admit the text messages to Schultz and argued that she could not have been at or on her way to meeting with Fleming at that time, and even if the only issue was timing, the jury would be left questioning the veracity of Enneking's recollection. This kind of strategic call is exactly the kind of call best left

-5-

to trial counsel. When coupled with the fact that counsel had already thoroughly impeached the victim regarding other meetings with Fleming, we are not definitely and firmly convinced that the trial court made a mistake when it found that defense counsel acted reasonably.

We are also not convinced that the trial court clearly erred when it found that defense counsel's failure to bring attention to these text messages did not prejudice Fleming. The evidence concerned a collateral matter—whether the victim consensually met with Fleming on other occasions than those on which she was claiming he harassed her. We recognize that this evidence had some bearing on whether the jury could conclude that the victim did in fact feel harassed by Fleming's continued contact. However, defense counsel had already thoroughly impeached the witness regarding whether she met with Fleming consensually. Another incident in which Fleming and a second witness testified that the victim met with him, but the victim testified that she did not, was not likely to affect the outcome of the case. We conclude that the trial court did not err when it determined that defense counsel rendered effective assistance.

## IV. PRIOR BAD ACTS EVIDENCE

Fleming contends that the erroneous admission of prior bad acts evidence that his assault of the victim had "sexual elements" was irrelevant and prejudiced him. We disagree.

Because this issue is unpreserved, we will review it for plain error affecting Fleming's substantial rights. See *Vaughn*, 491 Mich at 654. Generally, MRE 404(b)(1) prohibits a party from introducing evidence of another party's other crimes, wrongs, or acts to prove that person's character or propensity to engage in that type of action. However, MRE 404(b)(1) is a rule of inclusion, not exclusion. *People v VanderVliet*, 444 Mich 52, 64; 508 NW2d 114 (1993). The trial court properly admits other acts evidence if the proponent establishes that (1) it is offering the evidence for a proper purpose, (2) the evidence is relevant to a fact of consequence at trial, and (3) the evidence is not substantially more prejudicial than probative. *People v Sabin (After Remand)*, 463 Mich 43, 55-56; 614 NW2d 888 (2000). But MRE 403 provides that, even if evidence is relevant, the trial court may not admit it if the danger of its prejudicial effect substantially outweighs its probative value.

MCL 768.27b allows the trial court to admit evidence of prior assaults between the defendant and the victim and permits the trial court to admit evidence that MRE 404(b) would otherwise exclude. See MCL 768.27b; *People v Watkins*, 491 Mich 450, 470; 818 NW2d 296 (2012) (discussing MCL 768.27a, which is analogous). However, the trial court may not admit the evidence if it is unduly prejudicial. *Id*. at 487-488. Evidence is unduly prejudicial when its prejudicial effect substantially outweighs is probative value and there is a danger that the trier of fact may give it undue or preemptive weight. *Id*. at 489 (discussing MCL 768.27a); *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998) (discussing MRE 403).

In this case, Fleming consented to admit his pretrial release order, which indicated that he was charged with a CSC assault. During questioning, the victim testified that an incident in July led to police involvement, it had a "sexual element," and Fleming was arrested and charged with "CSC, assault."

We conclude that admission of this evidence did not constitute plain error. The evidence was offered for the proper purposes of establishing an element of aggravated stalking and of illustrating Fleming's pattern of behavior against the victim, and therefore it was admissible under MRE 404. It was also offered as part of a pattern of domestic violence under MCL 768.27b. Accordingly, any error in admitting the evidence was not clear or obvious. Further, there is no indication that the victim's testimony was substantially more prejudicial than probative under MRE 404, nor is there any indication that the evidence was unduly prejudicial under MCL 768.27b. The victim's testimony was brief and basically reiterated what the jury was already aware of from the admission of the pretrial order—namely, that Fleming was arrested for an alleged criminal sexual assault against the victim.

## V. JURY INSTRUCTIONS

Fleming contends that the trial court erroneously instructed the jury regarding what constitutes a "willing" pattern of conduct for aggravated stalking. We disagree.

Because Fleming failed to request an omitted jury instruction or to object to the instruction as given, we will review it for plain error affecting Fleming's substantial rights. See *People v Gonzalez*, 468 Mich 636, 642-643; 664 NW2d 159 (2003). "A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). The court must instruct the jury on all elements of the charged crime. *People v Armstrong*, 305 Mich App 230, 240; 851 NW2d 856 (2014).

Fleming contends that the question is not whether Fleming willfully intended the victim to feel harassed. The prosecution was required to prove that Fleming willfully engaged in the series of acts. See *People v Kieronski*, 214 Mich App 222, 231-232; 542 NW2d 339 (1995) (holding that sufficient evidence was presented to bind a defendant over when he willfully engaged in two or more separate acts). It is thus the *course of conduct* that must be willful, not the victim's feelings of harassment. See *id*. Accordingly, Fleming cannot show that the trial court erred by failing to instruct the jury that it must find that he specifically intended the victim to be harassed, much less that its error was plain.

## VI. SENTENCING ISSUES

Fleming raises several sentencing issues. While we conclude that the trial court properly assessed Fleming's offense variables, because Fleming's sentence involved a judicial factfinding, we vacate his sentence and remand for resentencing under *Lockridge*, ___ Mich at ___.

Fleming contends that his sentence must be vacated in light of *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013), because it involved judicial factfinding. In *Lockridge*, the Michigan Supreme Court held that *Alleyne* applies to Michigan's sentencing scheme, and the Sixth Amendment does not permit the trial court to increase a defendant's minimum sentence through judicial factfinding. *Lockridge*, ___ Mich at ___; slip op at 26. Fleming's sentence involved judicial factfinding in several offense variables. Accordingly, Fleming has demonstrated that "an unconstitutional constraint actually impaired [Fleming's] Sixth Amendment right." See *Id*. at ___; slip op at 32. We must "remand[] to the trial court to

determine whether the court would have imposed a materially different sentence but for the constitutional error." See *Id*. at ___; slip op at 34.

However, for the purposes of clarity on remand, we address the remainder of Fleming's sentencing challenges. This Court reviews the sentencing court's scoring of a sentencing guidelines variable for clear error. *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008). A preponderance of the evidence must support the trial court's determinations. *Id*. The proper interpretation and application of the sentencing guidelines is a question of law that this Court reviews de novo. *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004).

First, Fleming contends that the trial court improperly assessed OV 3 because the victim did not suffer an injury, and the jury acquitted him of home invasion. We disagree.

Under OV 3, the trial court must assess five points if "[b]odily injury not requiring medical treatment occurred to a victim." MCL 777.33(1)(e). " '[B]odily injury' encompasses anything that the victim would, under the circumstances, perceive as some unwanted physically damaging consequence." *People v McDonald*, 293 Mich App 292, 298; 811 NW2d 507 (2011). Bruising and redness may support assessing five points under OV 3. See *People v Apgar*, 264 Mich App 321, 329; 690 NW2d 312 (2004) (considering bruising and redness when determining whether the trial court properly assessed OV 3).

In this case, the victim testified that Fleming physically assaulted her, and Officer Castelein testified that the side of the victim's neck was red. Further, that the jury acquitted Fleming of home invasion does not necessarily mean that they found that he did not assault her. And even if it did, the trial court is not bound by the jury's determination, as long as the record evidence adequately supports its score. *People v Williams*, 191 Mich App 269, 276; 477 NW2d 877 (1991). We conclude that the trial court did not clearly err when it found that the victim suffered an injury. The evidence supported its assessment under OV 3.

Second, Fleming asserts that the trial court improperly assessed OV 7 because he did not cause the victim to suffer prolonged pain or humiliation and some fear of harm does not constitute brutality. We disagree.

Under OV 7, the trial court must assess 50 points if "[a] victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a). The trial court properly assesses 50 points under OV 7 if the defendant committed conduct "that was intended to make a victim's fear or anxiety greater by a considerable amount." *People v Hardy*, 494 Mich 430, 441; 835 NW2d 340 (2013). When assessing OV 7, the trial court should consider the elements of the offense, minimum amount of conduct necessary to commit the crime, and the defendant's conduct. *Id*.

In this case, the victim testified that Fleming implied that she was going to die and threatened to put acid in her face. This was conduct beyond the amount of conduct necessary to commit either larceny or aggravated stalking. The trial court could also reasonably infer that the threats were designed to substantially increase her fear and anxiety. We conclude that the trial court properly assessed 50 points for OV 7.

Third, Fleming contends that the trial court improperly assessed OV 8 because he did not move the victim to a place of greater danger. Under OV 8, the trial court properly assesses 15 points if "[a] victim was asported to another place of greater danger or to a situation of greater danger . . . ." MCL 777.38(1)(a). A place of greater danger *may* include a place where it is less likely that a person would see the defendant committing the crime. *People v Steele*, 283 Mich App 472, 490-491; 769 NW2d 256 (2009).

We are not definitely and firmly convinced that the trial court made a mistake when it found that the van was a situation of greater danger. Fleming's argument focuses on only the statute's "place of greater danger" language and entirely ignores the "situation of greater danger" language. While there was no indication that the van was a more isolated location than the victim's house, that does not necessarily mean that movement to the van did not place the victim in a *situation* of greater danger.

In this case, the victim testified that Fleming moved her from her bedroom and into a van. Fleming had a key to the van and had removed cellular phones from the van. The victim had also told Fleming that she had called the police, who were on their way to the house. Movement of the victim to the van removed her from possible methods of communication and self-defense in her home, such as locking herself into a room that Fleming did not have a key to. Further, movement to the van would also allow Fleming to more easily move the victim to a location where the police would be less likely to interrupt him while he assaulted her. While there was nothing more inherently dangerous about the van as a location, given the other facts of this case, the trial court could reasonably find that Fleming's movement of the victim to the van placed her in a situation of greater danger. We conclude that the trial court properly assessed 15 points under OV 8.

Fourth, Fleming contends that the trial court improperly assessed OV 10 because there was no evidence of a difference in size or personal characteristics that he exploited. We disagree.

The trial court properly assesses 10 points under OV 10 if the offender exploited a victim's vulnerability. MCL 777.40(1)(b). A victim is vulnerable if he or she has a "readily apparent susceptibility . . . to injury, physical restraint, persuasion, or temptation," such as when the defendant exploits a difference in the victim's relative sizes and strengths. MCL 777.40(3)(c); *People v Cannon*, 481 Mich 152, 158; 749 NW2d 257 (2008).

In this case, the victim testified that Fleming dragged her down the stairs and out of the house by her hair and that she was barely on her feet while Fleming was dragging her. While the record does not reflect any differences in size between the victim and the defendant, evidence that Fleming moved the struggling victim throughout the home provides evidence that Fleming exploited a difference in strength. We are not definitely and firmly convinced that the trial court made a mistake when it assessed 10 points under OV 10.

We affirm Fleming's convictions but vacate his sentence and remand for resentencing pursuant to *People v Lockridge*. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Joel P. Hoekstra
/s/ Peter D. O'Connell